# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

PATRICIA LYNN MCCLURE,           )
                                 )
        **Plaintiff,**           )
                                 )
        v.                       )    Case No. CIV-18-248-RAW-SPS
                                 )
**COMMISSIONER of the Social**   )
**Security Administration,**     )
                                 )
        **Defendant.**           )

## REPORT AND RECOMMENDATION

The claimant Patricia Lynn McClure requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-three years old at the time of the most recent administrative hearing (Tr. 543). She completed high school and two years of college and has worked as an administrative assistant, secretary, customer service representative, and accounting clerk (Tr. 154, 528). The claimant alleges that she has been unable to work since February 22, 2012, due to lumbar and cervical degenerative stenosis, cervical spinal stenosis, arthritis, depression, anxiety, and high blood pressure (Tr. 153).

### Procedural History

On June 18, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and she meets the insured status requirements through December 31, 2017. Her application was denied. ALJ Lantz McClain held an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 27, 2014 (Tr. 14-22). The Appeals Council denied review, but this Court reversed in Case No. CIV-15-358-RAW-KEW and remanded with instructions to properly evaluate the claimant's functional limitations and credibility (Tr. 568-582). On remand, ALJ McClain held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated October 19, 2017 (Tr. 514-530). The Appeals Council again denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently and stand/walk and sit six hours in an eight-hour workday, but that she could no more than frequently use her hands for handling or fingering (Tr. 520). The ALJ then concluded that the claimant could return to two of the four jobs found in her past relevant work: customer service representative and accounting clerk (Tr. 527-528). Alternatively, he found that there was work in the economy that she could perform, *i. e.*, mail room clerk and retail attendant (Tr. 528-529).

### Review

The claimant asserts that the ALJ erred: (i) by failing to properly evaluate two opinions by her treating physician, Dr. Coffman, and (ii) by failing to properly assess her RFC, including the ALJ's finding that she could perform light work. The undersigned Magistrate Judge agrees that the ALJ erred in his analysis, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease of the lumbar, cervical, and thoracic spine; right carpal tunnel syndrome; and osteoarthritis of the right thumb (Tr. 516). He further found she had the nonsevere impairments of hypertension, inflammatory arthritis, GERD, a 2012 left ankle stress fracture, depression, and anxiety (Tr. 517). The relevant medical evidence reveals that in

January 2011, the claimant underwent removal of a neuroma on her left foot, and then a second procedure in April 2011 because the wound was not healing (Tr. 228, 235).

A 2010 MRI of the cervical spine revealed worsening cervical spondylosis at multiple levels, as compared to a 2007 MRI (Tr. 254-255).  A 2012 MRI of the cervical spine revealed multilevel spondylosis of the cervical spine, creating varying degrees of spinal canal and foraminal stenosis, noting that multiple levels had worsened although there was some improvement at the C4-5 level (Tr. 257).  A 2017 MRI of the cervical spine revealed multilevel cervical degenerative disc and osteoarthritic changes resulting in central canal stenosis at C4-5 and C6-7 and foraminal stenosis on the left at C4-5 and bilaterally at C6-7 (Tr. 743).

In 2012, an MRI of the lumbar spine revealed multilevel degenerative disk and degenerative joint disease, with new disk bulging at L2-3, creating no significant stenosis (Tr. 251).  A 2017 MRI of the lumbar spine revealed multilevel lumbar degenerative disc and posterior facet osteoarthritic changes, but no focal disc protrusion or central canal or foraminal stenosis (Tr. 747).

A 2017 MRI of the thoracic spine revealed mild multilevel thoracic degenerative changes present with several subtle annular bulges, but no focal disc protrusion, nerve root entrapment, central canal stenosis, or foraminal stenosis (Tr. 745).

The claimant's primary care physician is Dr. Joseph Coffman, who treated the claimant's hypertension, neck pain, back pain, anxiety, depression, migraines, and GERD (Tr. 496).  Treatment notes reflect that the claimant had tenderness and a reduced range of motion of the lumbar and cervical spine due to pain, in addition to decreased strength in

the right arm compared to left and some decreased grip strength and decreased left leg strength (Tr. 497). On May 24, 2017, Dr. Coffman noted that the claimant's back pain had been gradually worsening since its onset, that pain was in the sacro-iliac and lumbar spine, and that symptoms were aggravated by sitting and standing (Tr. 7720.

On November 4, 2015, Dr. Coffman completed an insurance form titled "Attending Physician's Statement," in which he indicated that the claimant was totally disabled and would not be able to recover sufficiently to return to work. In support, he stated that the claimant was unable to bend, lift, sit/stand for any significant amount of time, and that she had a significant range of motion loss in the cervical and lumbar spine (Tr. 749). On October 12, 2016, he completed a second form, in which he reiterated the same opinion and reasoning (Tr. 751). On August 24, 2017, Dr. Coffman completed a Medical Assessment Form, in which he gave the claimant a poor prognosis for her diagnoses of degenerative disc disease of the neck, cervical radiculopathy, degenerative disc disease of the thoracic spine, degenerative disc disease of the lumbar spine, and depressive disorder (Tr. 777). He noted that she had severe pain and moderate fatigue, and that pain and fatigue would interfere with her attention and concentration more than 20% in an eight-hour workday (Tr. 777). He indicated that she would need more than three unscheduled breaks of at least fifteen minutes, that she would be absent from work more than four days a month, and that she had suffered from these symptoms since October 10, 2013 (Tr. 778).

Dr. Coffman also referred the claimant to Rehabilitation Physicians of Oklahoma and Dr. Jeff Halford, who treated the claimant's low back and leg pain with a series of steroid injections, noting that she had a reduced range of motion of the lumbar spine due

to pain, and that her cervical and lumbar paraspinals were tender to palpation (Tr. 440-463).  In April, July, and September 2012 she actually reported an increase in pain following her injections, and the treatment note in September 2012 indicates that the joint blocks only provided short-term relief (Tr. 456, 459).  She was also referred to a hand surgeon for a carpal tunnel release that was related to right upper extremity paresthesia that was posited to have a cervical-radicular component (Tr. 463).  On September 20, 2012, Dr. Halford completed an insurance form Attending Physician's Statement, in which he indicated that the claimant was totally disabled for more than twelve months, referring to his treatment notes (Tr. 465).

In October 2012, the claimant received an injection in her right thumb for recurrent right carpal tunnel syndrome and given a splint to wear.  She was to follow up to determine the need for revision carpal tunnel release (Tr. 467).

State reviewing physicians determined that the claimant could perform the full range of light work, except that she could only occasionally stoop (Tr. 65-67, 78-80).

In his most recent written opinion, the ALJ summarized the claimant's hearing testimony as well as some of the medical evidence in the record.  The ALJ correctly noted that a portion of the medical evidence submitted pre-dated the February 22, 2012 alleged onset days by several years, but nonetheless appropriately stated that it was relevant given the claimant's allegations and course of treatment with pain management (Tr. 522).  As relevant, he summarized Dr. Halford and Dr. Coffman's treatment notes.  He then found that the claimant's statements were not consistent with the medical evidence.  He acknowledged the MRI testing including pain, tenderness, and limitations in range of

motion, but stated that examinations of the claimant's extremities had "produced fairly normal results, and have indicated none to minimal deficits in strength, reflexes, and range of motion" (Tr. 525). Despite Dr. Coffman and Dr. Halford's reference to radiculopathy, the ALJ found that there was no diagnostic evidence of it (only clinical) and noted that Dr. Coffman only prescribed NSAIDs in 2013 and 2017, but otherwise recommended over-the-counter medications (Tr. 525). He then stated that the evidence supported the RFC listed above. The ALJ assigned some weight to the state reviewing physician opinions, both provided in 2012, finding it consistent with the record at the time, and consistent with more recent evidence because of the conservative treatment she received (Tr. 526). He assigned little weight to Dr. Coffman's three opinions, stating they were neither consistent with the record nor supported by his own treatment records because he said she experienced severe pain but only prescribed a steroid, NSAID, and muscle relaxer; a recent exam indicated normal strength and reflexes; and he only saw her once a year (Tr. 527). With regard to Dr. Coffman's sit/stand limitations, the ALJ rejected it because the claimant had not been hospitalized and only took medication (Tr. 527). He then gave scant weight to Dr. Halford's opinion because he wrote "see notes" in support and did not write out the evidence found in his treatment notes (Tr. 527). The ALJ ultimately concluded that the claimant was not disabled.

  The undersigned Magistrate Judge finds that the ALJ failed to properly assess the evidence regarding the claimant's physical impairments. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily

-8-

activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

As an initial matter, the undersigned Magistrate Judge notes that although the ALJ *did* include one limitation (no more than frequent use of the hands for handling and fingering) related to the claimant's physical impairments in the RFC, the ALJ has connected no evidence in the record to instruct this Court as to how such a limitation accounts for each of the claimant's severe impairments, *i. e.*, degenerative disc disease of the lumbar, cervical, and thoracic spine, right carpal tunnel syndrome, and osteoarthritis of the right thumb. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). This was a significant omission here because these impairments can have limitations that directly impact the claimant's ability to perform work. Instead, the ALJ should have explained why the claimant's severe impairments did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to

discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

In fact, the ALJ ignored or discredited every piece of evidence related to the claimant's functional limitations in the record. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. The ALJ appeared to focus solely on records with positive findings regarding the claimant's physical impairments in a deliberate attempt to pick and choose among the evidence in order find the claimant not disabled. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. This was error. Instead, the ALJ should have explained why the claimant's severe physical impairments, supported by repeated treating physician opinion findings, did not call for corresponding limitations in

the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

Moreover, the medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's

medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians, of which there were several in this case. The ALJ's analysis, as described above, falls short in this case. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record related to her documented reduced range of motion of the lumbar and cervical spine. Indeed, the ALJ wholly failed to explain how such documented reduced range of motion, and continued pain nevertheless allowed the claimant to perform light work with its attendant total sitting/standing requirements where the only physician to exam the claimant and opine as to this ability said she was unable to do so. *See Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman*, 362 F.3d at 681 (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer*, 742 F.2d at 385-386.

Furthermore, although an ALJ is not required to give controlling weight to an opinion that the claimant could not return to work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he *is required* to determine the proper weight to give that opinion by applying the factors in 20

-12-

C.F.R. § 404.1527, specifically in relation to functional limitations. Instead, the ALJ ignored the evidence in the record regarding the claimant's continued pain and worsening condition, focusing on those notes where the claimant was doing well. The ALJ thus improperly evaluated the treating physician opinion that the claimant could not work. *See Hardman*, 362 F.3d at 681 (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984). Moreover, the ALJ is not permitted to engage in unsubstantiated speculation to reject a treating physician opinion as he did here when he found that because she had not been hospitalized Dr. Coffman's opinion was not valid. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences form medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.").

Finally, because the ALJ rejected the opinions of Dr. Coffman and Dr. Halford, and further found that the state reviewing physician opinions did not wholly account for the claimant's physical limitations, the ALJ has *connected no evidence in the record* to instruct this Court as to how the claimant's limitations are accounted for in the RFC. The undersigned Magistrate Judge acknowledges that the record in this case is sparse with regard to actual functional examining evaluations of the claimant's physical impairments, as well as the ALJ's broad latitude in deciding whether to order consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has

-13-

presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). Nevertheless, the undersigned Magistrate Judge encourages the ALJ to consider recontacting the claimant's treating physician, Dr. Coffman and/or ordering a consultative examination to properly account for the claimant's impairments. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record, but an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record, and the undersigned Magistrate Judge leaves that to the ALJ on remand. *See Hawkins*, 113 F.3d at 11666, 1168. However, the ALJ's discretion is not boundless, and under the circumstances in this case, the ALJ should at least have explained why he failed to further develop the record.

Accordingly, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence in the record. If the ALJ's subsequent analysis results in any changes to

-14-

the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 2nd day of March, 2020.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**